UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TAMMY L. THOMSEN, Personal Representative of the Estate of DALE L. THOMSEN, Deceased, | Case No. 3:19-CV-00969-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| NAPHCARE, INC., an Alabama Corporation; WASHINGTON COUNTY, a government body in the State of Oregon; PAT GARRETT, in his capacity as Sherriff for Washington County; ROBERT DAVIS, an Individual; DON BOHN, an Individual; JULIE RADOSTITZ, an Individual; MELANIE MENEAR, an Individual; KATHY DEMENT, an Individual; KATIE BLACK, an Individual; ANDREA JILLETTE, an Individual; MORGAN HINTHORNE, an Individual; RACHEL STICKNEY, an Individual, | |
| Defendants. | |

PAGE 1 – OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Tammy L. Thomsen ("Plaintiff"), the Personal Representative of the Estate of Dale L. Thomsen ("Thomsen"), filed this lawsuit against Defendants NaphCare, Inc. ("NaphCare"), Washington County, and assorted Naphcare and Washington County employees and administrators, alleging multiple claims under 42 U.S.C. § 1983 ("Section 1983") and Oregon law arising from Thomsen's death while in custody at the Washington County jail. Before the court is Plaintiff's Second Motion to Compel ("Motion"). (Pl.'s Second Mot. to Compel, ECF No. 118 ("Mot.")). The court DENIES Plaintiff's Motion, except as GRANTED with respect to the additional information pertaining to RFP 112, as described below.

*Background*

The court previously has set forth the facts of this case in detail (*see* Opinion and Order dated March 24, 2020, ECF No. 92), and thus provides those facts and procedural history relevant to the instant motion. In 2017, the Hillsboro Police arrested Thomsen and booked him into the Washington County jail (the "Jail"). While in custody, Thomsen's behavior became erratic, and he suffered an abrupt and observable change in his mental status. Thomsen's concerning behavior continued until he later collapsed in a holding cell, where he had been placed for observation. Despite several attempts to revive him, Thomsen died.

Plaintiff subsequently filed this lawsuit, in which she alleges Thomsen's death resulted from severe alcohol withdrawal that went unrecognized and untreated by Jail staff and medical personnel. Defendant NaphCare denies Thomsen's death resulted from any type of withdrawal, and asserts that all NaphCare personnel, and Jail staff for whom NaphCare provides limited

training, responded appropriately given Thomsen's known medical history and symptoms, and provided him with adequate care.

The parties have engaged in multiple discovery disputes since this lawsuit began, several of which have required this court's intervention.[1]  To date, Plaintiff has taken twenty-nine depositions and is scheduling another four with individuals associated with NaphCare. (Decl. of Rachel A. Robinson in Supp. of Def. NaphCare, Inc.'s Resp. to Pl.'s Second Mot. to Compel, ECF No. 128 ("Robinson Decl."), ¶ 2.)  Additionally, Plaintiff has issued 113 requests for production to NaphCare, and NaphCare has produced 13,332 pages of responsive documents. (*Id.*)

Plaintiff now seeks a court order compelling production of all responsive documents with respect to Requests for Production ("RFP") 49, 70, and 112.[2]  Naphcare opposes the Motion and argues that it should be denied in its entirety. (Def. NaphCare, Inc.'s Resp. to Pl.'s Second Mot. to Compel, ECF No. 126 ("Def.'s Resp."), at 2.)

*Legal Standards*

Federal Rule of Civil Procedure ("Rule") 26(b)(1) sets forth the general scope of permissible discovery, providing, in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope discovery need not be admissible in evidence to be discoverable.

---

[1] The Most recent of these occurred August 6, 2020 on Plaintiff's Motion to Take Additional Depositions.  (*See* Minutes of Proceedings, ECF No. 114.)

[2] Plaintiff confirmed at oral argument on March 4, 2020, that the parties have resolved the issues raised in Plaintiff's Motion concerning RFPs 71, 72, 82, 103, and 113.

PAGE 3 – OPINION AND ORDER

FED. R. CIV. P. 26(b)(1). The court, however, must limit the extent of discovery if it determines that the discovery sought is outside the scope of Rule 26(b)(1), or if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i); *Quaiz v. Rockier Retail Group, Inc.*, Case no. 3:16-cv-01879-SI, 2017 WL 960360, at *1 (D. Or. Mar. 31, 2017). The court also has discretion to limit the scope of discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C)(iii).)

A party seeking discovery may move for an order compelling the production of requested documents. FED. R. CIV. P. 37(a)(3)(B). The party seeking to compel discovery is burdened with demonstrating the information he or she seeks is relevant under Rule 26(b)(1). *Sarnowski v. Peters*, Case No. 2:16-cv-00176-SU, 2017 WL 4467542, at *2 (D. Or. Oct. 6, 2017). Information is "relevant" if it is "'reasonably calculated to lead to the discovery of admissible evidence,'" and district courts have broad discretion to determine the relevancy of the information sought. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (quoting *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992)). The party opposing discovery "has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (first citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); then citing *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990)); *see also Yufa v. Hach Ultra Analytics*, No. 1:09-cv-3022-PA, 2014 WL 11395243, at *1 (D. Or. Mar. 4, 2014) ("If a party elects to oppose a discovery request, the opposing party bears the burden of establishing

that the discovery is overly broad, unduly burdensome, or not relevant. Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." (citation and quotation omitted)). If a party objects to a discovery request, it is the burden of the party seeking discovery on a motion to compel to demonstrate why the objection is not justified. *Weaving v. City of Hillsboro*, No. CV-10-1432-HZ, 2011 WL 1938128, at *1 (D. Or. May 20, 2011).

*Discussion*

I.  RFP 49

Plaintiff requested that NaphCare produce the following documents concerning Thomsen's death:

> REQUEST NO. 49: Complete copies of any and all documentation relating to the "Procedure In the Event of an Inmate Death" process as required by the National Commission on Correctional Healthcare Standard J-A-10 including but not limited to: any administrative review, clinical mortality review, and any psychological autopsy performed in the aftermath of the death of Dale Thomsen.

(Mot. at 2–3.) In its written responses, NaphCare submitted the following objection to RFP 49:

> RESPONSE: Defendant objects because the request implies the NCCHC has the authority or does "require" a particular thing in every circumstance. The NCCHC is a voluntary credentialing entity. Without waiving an objection or affirming that something was "required," responsive materials in defendant's possession are attached.

(Decl. of Dain Paulson in Supp. of Pl.'s Second Mot. to Compel, ECF No. 120 ("Paulson Decl."), Ex. 1 at 15.)

Plaintiff contends that although NaphCare has produced "some" documents responsive to RFP 49, it failed to produce any materials concerning its "corporate level administrative review of [Thomsen's death]." (Mem. in Supp. of Pl.'s Second Mot. to Compel, ECF No. 119 ("Pl.'s Mem."), at 3.) Plaintiff argues that NaphCare now has waived any potential objections to production of those materials because it failed to assert a privilege objection and failed to list any documents related to the corporate review in the privilege log. (*Id.* at 5.) NaphCare responds that

PAGE 5 – OPINION AND ORDER

it clearly asserted both attorney-client and work product privilege in its written responses to Plaintiff's First Requests for Production, and plainly identified documents related to the corporate review of Thomsen's death in multiple privilege logs provided to Plaintiff in March 2020. (Def.'s Resp. at 3.)

This court previously addressed RFP 49 at oral argument on Plaintiff's first Motion to Compel on March 3, 2020, ordering NaphCare "to produce a privilege log and confirm whether or not there has been peer or administrative review [of Thomsen's death] by 3/13/2020." (*See* Minutes of Proceedings, ECF No. 81.) In an email dated March 13, 2020, counsel for NaphCare informed Plaintiff's counsel that a corporate review of Thomsen's death had occurred, that "several attorneys were present during that meeting so any information from it would be protected by the attorney-client privilege and likely work product," and that all responsive documentation otherwise had been produced. (Paulson Decl., Ex. 4.) NaphCare provided Plaintiff's counsel a privilege log the same day. (Paulson Decl., Ex. 5.)

Plaintiff nevertheless asserts that pursuant to *Burlington Northern Santa Fe Railway Company v. Kapsner*, 408 F.3d 1142 (9th Cir. 2005), NaphCare waived any potential objections to production of materials responsive to RFP 49 because it failed to assert a privilege objection and failed to list any documents related to the corporate review meeting in the privilege log. (Pl.'s Mem. at 5–8.) Specifically, Plaintiff argues that NaphCare improperly relied on a list of generally applicable objections to preserve its assertion of privilege, and that NaphCare failed to adequately identify and describe documents created as part of its administrative review of Thomsen's death, despite this court's previous order to do so. (*Id.* at 5–6.)

In *Burlington Northern*, the Ninth Circuit acknowledged that a party's failure timely to produce a privilege log may result in a complete waiver as to those documents that have not been

PAGE 6 – OPINION AND ORDER

produced, but expressly rejected a *per se* waiver rule. 408 F.3d at 1149. "Rather, the [c]ourt is to determine waiver on a case-by-case basis, taking into account the 'particular circumstances of the litigation.'" *Amy's Kitchen, Inc. v. Stukel Mountain Organics LLC*, Case No. 1:16-cv-00071-CL, 2016 WL 9406695, at *6 (D. Or. Sept. 28, 2016) (quoting *Burlington Northern*, 408 F.3d at 1149). Importantly, the court must include in its analysis "any applicable local rules, agreements or stipulations among the litigants, and discovery or protective orders." *Burlington Northern*, 408 F.3d at 1149.

Plaintiff's arguments are unpersuasive for two reasons. First, the record indicates that NaphCare properly asserted privilege with respect to RFP 49, both in its generalized written objections and in its communications with Plaintiff. Although "blanket assertions of privilege or protection in response to a discovery request are prohibited," *Amy's Kitchen*, 2016 WL 9406695, at *6, NaphCare initially objected to RFP 49 only "to the extent it seeks disclosure of information and material that are subject to the attorney-client privilege and/or which constitute trial preparation materials[,]" and otherwise produced responsive documents. (*See* Paulson Decl., Ex. 1 at 2, 15 (preserving privilege and noting that "responsive materials in defendant's possession are attached").) In the written response to Plaintiff's first Motion to Compel, NaphCare's counsel asserted that the administrative review documents requested constituted work-product, and expressly asserted attorney-client privilege during oral argument on that motion. (Def.'s Resp. to Pl.'s Mot. to Compel, ECF No. 65, at 10–11; Robinson Decl., Ex. A.) Counsel for NaphCare then expressly stated in an email to Plaintiff's counsel dated March 13, 2020, that attorney-client and work product privileges shielded documents arising from the corporate review of Thomsen's death. (Paulson Decl., Ex. 4.) Given the breadth of discovery in this case; NaphCare's initial, generalized preservation of privilege; and its subsequent, more detailed assertion of privilege with

respect to specific documents uncovered during the discovery process, finding waiver of the privilege would be unreasonable and is not warranted here. *See Burlington Northern*, 408 F.3d at 1149 (noting that consideration of whether a party has waived objection based on privilege must be undertaken "in the context of a holistic reasonableness analysis").

Second, as NaphCare points out in its response to Plaintiff's Motion, it produced a privilege log on March 13, 2020, per this court's order, and the privilege log included several entries related to the corporate review of Thomsen's death: "Morbidity and Mortality Review Minutes, Sign in sheet" dated 7/19/17; "Morbidity and Mortality Meeting Agenda, Minutes" dated 8/16/17; and "Memo re Corporate Morbidity and Mortality Review" dated 9/14/17. (*Id.*) Naphcare also provided Plaintiff a revised privilege log on March 25, 2020, again including descriptions for the documents listed above, and adding an entry for "Morbidity and Mortality Meeting Agenda, Minutes" dated 10/21/19. (Robinson Decl., Ex. B.) NaphCare has since provided an amended privilege log that includes additional details such that Plaintiff cannot reasonably claim that she is unable to evaluate NaphCare's claims of privilege. (*See* Robinson Decl., Ex. C.) Thus, despite Plaintiff's assertions to the contrary, the privilege logs provided by NaphCare plainly list documents related to the corporate review of Thomsen's death, and include information sufficient to establish that the documents are privileged.

In sum, NaphCare properly asserted privilege with respect to RFP 49, and subsequently produced a privilege log as the court ordered. Accordingly, the court DENIES Plaintiff's Motion with respect to RFP 49.

B.  RFP 70

Plaintiff seeks documents concerning NaphCare's response to other instances of alcohol and drug withdrawals in its facilities as follows:

PAGE 8 – OPINION AND ORDER

>REQUEST NO. 70: All Corrective Action Plans concerning any failure to recognize, failure to treat, or failure to treat properly any inmate or detainee for drug or alcohol withdrawal issues from 2014 to the present.

(Mot. at 3–5.)

Plaintiff concedes that NaphCare has produced 902 pages responsive to RFPs 39, 70, 71, and 72, but complains that all documents produced concern investigation into inmate deaths only. (Pl.'s Mem. at 9–10.) Plaintiff argues that RFP 70 seeks *all* similar instances of failure to treat regardless of whether the individual died and although NaphCare has agreed to provide responsive documents, it has provided no documents concerning living persons. (*Id.* at 9.)

NaphCare notes that the court previously addressed RFP 70 at the hearing on Plaintiff's first Motion to Compel on August 6, 2020, during which it ordered NaphCare to "determine whether any documents exist with respect to corrective action plans created in Washington County following instances of drug or alcohol withdrawal or overdose from 2016-2017." (Minutes of Proceeding, ECF No. 114.) NaphCare confirms that it has not identified any corrective action plans that were created for the Jail in connection with withdrawal or overdose during the specified time period, other than that created in the wake of Thomsen's death. (Def.'s Resp. at 6.) NaphCare emphasizes, however, that identifying and locating such plans is burdensome and time-consuming because there is no centralized mechanism by which to search for plans that include the specific criteria elaborated here. (*Id.*) Accordingly, NaphCare argues that Plaintiff's Motion should be denied because it has complied with the court's order and any additional searches would not be proportionate to the needs of this case. (*Id.*)

The court acknowledges that there appears to be no readily accessible means by which NaphCare may search for and identify the broad range of corrective action plans Plaintiff requests

PAGE 9 – OPINION AND ORDER

here, particularly those plans generated because of a non-fatal event. As previously explained by NaphCare's counsel during the August 2020 hearing:

> COUNSEL: But the corrective action plans, to find those – I don't even know how to go about finding those if we can't identify an incident [i.e. a death] that would have generated it. Does that make sense?
>
> THE COURT: Yes. I understand.
>
> COUNSEL: So I don't know, and I don't know how to communicate to my client, other than starting here, which was identify those times where we could that somebody died as a result of [drug or alcohol withdrawal], because that's the most likely thing to generate a corrective action plan.
>
> I could try to find all corrective action plans for Washington County. That might be a doable activity, but I don't know how to find corrective action plans as a result of drug or alcohol withdrawal when we can't identify some of the causes of death. I mean, the thing that – frankly, a lot of these were just medical death, no autopsy, cause of death unknown.
>
> . . . .
>
> So I guess what I would hope is that if we do need to revisit these issues, and I have been trying as much as I can to cooperate and continue to provide discovery, and we have been providing discovery as we get it. We are doing it in batches. We are not withholding things. If we need to revisit this issue, after Mr. Paulson has a chance to review this, then we can revisit the issue, and I can give that information to Mr. Paulson and the Court and whoever else wants it. If somebody wants to formulate a plan, I'm happy to listen to it. But to simply say, "Well, we want all corrective actions [sic] plans," it is not that easy. You have to give somebody something – that's not how they are organized. You don't organize a corrective action plan as a result of drug or alcohol withdrawals. There wouldn't be a way to search for that. It is not – and I have had multiple conversation with the lawyer and the paralegal about how to find this information that was requested.

(Robinson Decl., Ex. D at 5–7.) NaphCare's counsel explained during the March 4, 2021 oral argument on the instant motion that locating corrective action plans would require a physical and electronic search of each specific NaphCare facility and its computer systems. Further, such searches nevertheless might be fruitless because documents are not always generated to memorialize improvement plans after an incident, particularly if that incident did not result in death.

PAGE 10 – OPINION AND ORDER

Considering NaphCare's previous production of documents and its explanation of the difficulty in further responding to RFP 70, and Rule 26(b)(1)'s proportionality requirement, the court finds that Plaintiff has not adequately explained why the 902 pages already produced are so inadequate as to warrant a court order requiring NaphCare to continue the cumbersome and time-consuming process of trying to identify responsive records that may not even exist. NaphCare confirmed that it conducted a diligent and reasonable search but could not locate any corrective action plans created for the Jail concerning drug or alcohol overdose or withdrawal during the specified time period, except for the action plan created in response to Thomsen's death, and Plaintiff presents no evidence to cast doubt on NaphCare's representation that it conducted a reasonable and diligent search. Requiring NaphCare to comb through all of its records in search of potentially responsive documents would prove unduly burdensome to NaphCare and would not be proportionate to the needs of the case. Accordingly, the court DENIES Plaintiff's Motion as to RFP 70, but with leave to renew if the request can be narrowed in a manner that makes production less onerous.

    D.    RFP 112

Plaintiff seeks a court order compelling production of information concerning previous legal action taken against Naphcare. Specifically:

> REQUEST NO. 112: Copies of any and all documents detailing the settlement of any and all claims that defendant Naphcare and its entities have entered into from June 2014 to the present where at least one allegation included a failure to treat, or a failure to properly treat an inmate or detainee who exhibited changes in mental status similar to those alleged [in this] action.

(Mot. at 5.) Plaintiff argues that she has limited the scope of RFP 112 as stated in the court's Opinion and Order dated March 24, 2020, (ECF No. 92), and that the information she requests is relevant to her custom-and-practice claims against NaphCare because "the fact of settlement and

the amount shows NaphCare's knowledge of similar incidents occurring at its facilities." (Pl.'s Mem. at 11.)

NaphCare argues that the discovery requested is not proportional to the needs of the case considering the significant discovery already provided in response to requests for production concerning the "custom and practice" claims, that the request is overbroad, and that "all documents" detailing settlements could include documents protected by the attorney-client privilege or the work product privilege. (Def.'s Resp. at 8–10.)  Specifically, Naphcare asserts that it has already produced more than 5,400 pages of documents relevant to Plaintiff's custom or practice claims, including documents Plaintiff deemed "critical" to those claims, and that it is unclear why additional information is needed. (*Id.* at 9.)  Because Plaintiff has not explained "how any benefit of the production would exceed the substantial expense to NaphCare associated with identifying, locating, and producing the broad scope of documents requested," Naphcare asserts that an order compelling production is unwarranted. (*Id.* at 10.)

Assuming that Thomsen's death was indeed the result of severe alcohol withdrawal that went unrecognized and untreated by Naphcare employees at the Washington County jail, the fact that Naphcare previously reached settlements based on similar factual circumstances is relevant here and potentially could be used to establish knowledge. *See Green v. Baca*, 226 F.R.D. 624, 642 (C.D. Cal. 2005) ("evidence of the number of settlements into which [the defendant] entered may be admissible to prove knowledge") (citing *Spell v. McDaniel*, 824 F.2d 1380, 1400 (4th Cir. 1987).  Plaintiff therefore is entitled to know whether claims alleging failure to treat alcohol withdrawal have been asserted against NaphCare during the relevant time period, and whether those claims resulted in a settlement or adverse judgment.  However, the amount of those settlements is not relevant to the question whether NaphCare was on notice that its staff had

PAGE 12 – OPINION AND ORDER

previously failed to identify and treat alcohol or drug withdrawal — Plaintiff's professed purpose in obtaining such records. Accordingly, the court DENIES Plaintiff's Motion as to RFP 112, but ORDERS NaphCare to produce a list of previous claims and ensuing settlements where the gravamen of the claim was failure to treat alcohol withdrawal.

*Conclusion*

For the reasons stated above, the court DENIES Plaintiff's second Motion to Compel (ECF No. 118), except as GRANTED with respect to the additional information pertaining to RFP 112, as described above.

DATED this 5th day of March, 2021.

_____
JOHN V. ACOSTA
United States Magistrate Judge

PAGE 13 – OPINION AND ORDER