**Timothy J. Jones, OSB No. 890654**
Email: tim@timjonespc.com
**Tim Jones PC**
707 SW Washington St., Suite 600
Portland OR 97205
Phone: (503) 374-1414
Facsimile: (971) 925-9034

**John M. Coletti, OSB No. 942740**
Email: john@paulsoncoletti.com
**Paulson Coletti Trial Attorneys PC**
1022 NW Marshall Street, Suite 450
Portland, OR 97209
Phone: (503) 226-6361
Facsimile: (503) 226-6276

Attorneys for Plaintiff
*(Additional counsel listed on signature page.)*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON - PORTLAND DIVISION

| | |
|---|---|
| **TAMMY L. THOMSEN,** **Personal Representative of the Estate of DALE L. THOMSEN**, Deceased, | **Case No. 3:19-CV-00969-AC** **FIRST AMENDED COMPLAINT** |
| Plaintiff, | **VIOLATION OF CIVIL RIGHTS (42 USC § 1983) and SUPPLEMENTAL STATE CLAIMS** |
| v. | |
| **NAPHCARE, INC.**, an Alabama Corporation; **WASHINGTON COUNTY**, a government body in the State of Oregon; **ERIN LARSEN**, an individual; **LISA WAGNER**, | **DEMAND FOR JURY TRIAL** |

**Page 1 - First Amended Complaint**

an Individual; **JULIE RADOSTITZ, MD,**
an Individual; **MELANIE MENEAR,** an
Individual; **KATHY DEMENT,** an Individual; **KATIE**
**BLACK,** an Individual; **ANDREA JILLETTE,**
**also known as ANDREA GILLETTE,** an
Individual; **MORGAN HINTHORNE,**
an Individual; **RACHEL STICKNEY,** an
Individual; and **JOHN/JANE DOES 1-10.**

       Defendants.

_____

## INTRODUCTION

1.  Dale Thomsen was arrested on the evening of June 25, 2017 by Hillsboro Police
    Department for failure to appear on a traffic related offense. Shortly thereafter he was
    booked into the Washington County jail. At that time, and all times relevant, Washington
    County contracted with NaphCare, Inc. to provide medical services at the jail. At intake,
    Mr. Thomsen was determined to be oriented to person, place, time and situation. His
    appearance, behavior and perception were deemed appropriate. It was determined he was
    not delusional, hallucinating or disorderly: rather he was cooperative. He voiced no
    anxiety. Over the next three days Thomsen's condition deteriorated. On multiple
    occasions Mr. Thomsen's wife contacted court officials and jail deputies providing an
    affidavit to explain she was concerned for her husband's health and safety given he was
    brain injured, with a related seizure disorder, and was an alcoholic. She was assured on
    each occasion his health issues would be taken into account and addressed medically. The
    medical concerns raised by Mrs. Thomsen did not result in a medical exam, evaluation or
    other contact with the jail medical staff. In the meantime, Mr. Thomsen became
    disruptive, angry, paranoid, losing his orientation of person, time and place. He became

delusional, began to hallucinate, became agitated, hyperverbal and anxious, causing an LPN who interacted with him to conclude he was suffering from dementia or Alzheimer's disease. A mental health evaluation was ordered but never performed. Because of his change in behavior, Mr. Thomsen was taken out of general population and placed in an individual cell at or about 8:00 am on June 28, 2017. Once placed in a cell, he pounded and kicked the cell door for hours before he collapsed and died. Mr. Thomsen was never seen by a physician while at the Washington County jail. Other than the initial interview he was never seen by a registered nurse while at the Washington County Jail.

## JURISDICTION AND VENUE

2.    This action arises under the constitution and laws of the United States and jurisdiction is based on 28 USC § 1331 and 28 USC § 1343(a). This Court has pendant jurisdiction of the state law negligence claims pursuant to 28 USC § 1367, and diversity jurisdiction pursuant to 28 USC § 1332(c)(2).

## PARTIES

3.    Plaintiff Tammy L. Thomsen is the duly appointed personal representative of the Estate of Dale L. Thomsen, deceased. Tammy L. Thomsen is the surviving spouse of Dale L. Thomsen, deceased. At the time of his death, Thomsen was a citizen and a resident of the State of Oregon. Dale L. Thomsen is survived by his spouse, Tammy Thomsen, as beneficiary under ORS 30.020. From June 25 - 28, 2017 Dale L. Thomsen was a detainee in the Washington County Jail.

4.    NaphCare, Inc. was and is an Alabama corporation authorized to do business in the State of Oregon (hereinafter referred to as NaphCare). At all relevant times, NaphCare's

business is providing medical services in jails and prisons nationally, and in Washington County jail specifically.  At all pertinent times herein, NaphCare was acting under color of state law.

5. Washington County is an Oregon county.  Washington County operates a jail in Hillsboro, Oregon, and is responsible for the provision of medical care for all detainees and persons in its custody.  At all times material, Washington County contracted with NaphCare to provide all necessary medical care to detainees and persons held at the Washington County jail.

6. Based upon information and belief, Julie Radostitz, a licensed physician, was the chief medical health officer for NaphCare in June 2017, and at all times pertinent was responsible for the health policies, customs and procedures utlitized by NaphCare employees working in the Washington County Jail.  At all times herein peritent, defendant Radostitz was acting under color of state law.  Based upon information and belief, defendant Radostitz is a citizen and resident of the State of Oregon.

7. Based upon information and belief, Kathy Menear, a Health Services Administrator, was a NaphCare employee who at all times pertinent was a Health Services Administrator working in the Washington County Jail.  At all times herein pertinent, defendant Menear was acting under color of state law.  Based upon information and belief, defendant Menear is a citizen and resident of the State of Oregon.

8. Based upon information and belief, defendant DeMent, a Registered Nurse, was a NaphCare employee who at all times pertinent was a registered nurse working in the Washington County Jail.  At all times herein pertinent, defendant DeMent was acting

under color of state law.  Based upon information and belief, defendant DeMent is a
citizen and resident of the State of Oregon.

9.    Based upon information and belief, Katie Black, a Licensed Practical Nurse, was a
NaphCare employee who at all times pertinent was a licensed practical nurse working in
the Washington County Jail.  At all times herein pertinent, defendant Black was acting
under color of state law.  Based upon information and belief, defendant Black is a citizen
and resident of the State of Oregon.

10.    Based upon information and belief, Andrea Jillette, also known as Andrea Gillette, a
Registered Nurse, was a NaphCare employee who at all times pertinent was a licensed
registered nurse working in the Washington County Jail.  At all times herein pertinent,
defendant Jillette was acting under color of state law.  Based upon information and belief,
defendant Jillette is a citizen and resident of the State of Oregon.

11.    Based upon information and belief, Morgan Hinthorne, a Registered Nurse, was a
NaphCare employee who at all times pertinent was a licensed practical nurse working in
the Washington County Jail.  At all times herein pertinent, defendant Hinthorne was
acting under color of state law.  Based upon information and belief, defendant Hinthorne
is a citizen and resident of the State of Oregon.

12.    Based upon information and belief, Rachael Stickney, a Licensed Practical Nurse, was a
NaphCare employee who at all times pertinent was a licensed practical nurse working in
the Washington County Jail.  At all times herein pertinent, defendant Stickney was acting
under color of state law.  Based upon information and belief, defendant Stickney is a
citizen and resident of the State of Oregon.

13.    At all material times, defendants John/Jane Does 1-10 were NaphCare or Washington County employees, officers, administrators, and supervisors responsible for the provision of medical services, the enactment and implementation of policies, practices, and customs relating to the delivery of health care at the Washington County jail.  At all times herein pertinent, defendants John/Jane Does 1-10 were acting under color of state law.

## FACTUAL ALLEGATIONS

14.    Washington County's Hillsboro jail houses pretrial detainees and persons convicted of crimes. Washington County is obligated by state and federal law to provide medical and mental health care for persons lodged in the Washington County jail.

15.    Since opening the jail in Hillsboro in 1998, Washington County has contracted with private healthcare organizations to provide healthcare to jail inmates and detainees. In the aftermath of the death of Madaline Pitkin at the Washington County jail, the contract with Corizon Healthcare was terminated and Washington County contracted with NaphCare.  In exchange for a fee, NaphCare assumed all responsibility to establish a medical audit committee, to assure quality healthcare was accessible to all inmates and detainees; to implement all policies and procedures necessary for operation of the Washington County jail healthcare program, to tailor specific policies and procedures for the Washington County jail as required by the National Commission on Correctional Healthcare standards (NCCHC); to provide a medical detoxification program for drug and/or alcohol addicted inmates and detainees; to provide intermittent monitoring of all detoxification cells located in the jail to determine the health status of individuals,

monitoring including, at a minimum, documentation of vital signs and determination of levels of consciousness every two hours for severe cases; to recruit, interview, hire, train and supervise all healthcare staff; to implement a quality assurance program; and to maintain staffing levels as set forth by the contract with Washington County and consistent with the standards set forth by the NCCHC.

16.    On April 23, 2017, Dale Thomsen was arrested by the Hillsboro Police Department for failure to perform the duties of a driver. He was transported and booked into the Washington County jail. RN Shelley Edwards evaluated Mr. Thomsen commenting: he was cooperative, voiced no anxiety, that he was oriented to person, place, time and situation. Ms. Edwards noted his appearance, behavior, perception and affect were all appropriate. He was not agitated but rather cooperative. His physical exam revealed his heart rate and respirations were normal. It was documented by Ms. Edwards that Mr. Thomsen had a history of a serious head injury with a related seizure disorder. He was released shortly thereafter.

17.    On June 25, 2017, Mr. Thomsen was once again arrested by the Hillsboro Police Department for failure to appear on the previous charge. At the time of booking, Mr. Thomsen was once again evaluated by the NaphCare medical staff. At 4:48 PM, Mr. Thomsen was evaluated by Kathy DeMent, RN. At the time of this medical screening, nurse DeMent did not detect any mental health issues. Mr. Thomsen did not exhibit any disorientation to person, place, time or situation. He was not experiencing auditory, visual or other hallucinations, nor did he exhibit a delusional thought process or psychosis. Nurse DeMent documented he was clean and well groomed, cooperative and

did not voice any anxiety. Nurse DeMent was of the opinion Mr. Thomsen was oriented to person, place, time and situation. His appearance, behavior and perception were deemed appropriate.   Specifically, nurse DeMent concluded Mr. Thomsen was not delusional, he was not hallucinating nor was he disorderly. She concluded Mr. Thomsen was alert, appropriate and cooperative. His vital signs were recorded as normal. His blood pressure was 137/84, his pulse 88 and his respirations 18. He was cleared to perform work in the kitchen or any other work within the jail.  Nurse Dement did not note the previous history of brain injury and seizure disorder.

18.    On the evening of June 25, 2017, Mr. Thomsen's wife Tammy, contacted the Washington County jail and apprised jail personnel that her husband was brain injured, had a seizure disorder and was an alcoholic. At 7:32 PM on the night of June 25, 2017, Mr. Thomsen contacted his wife by phone from the Washington County jail, his call was monitored and recorded.   Mrs. Thomsen conveyed to her husband that she had told the officers at the jail that Mr. Thomsen was an alcoholic and they would need to keep an eye on him.

19.    On June 26, 2017, Tammy Thomsen went to the Washington County Circuit Court requesting the release of her husband, submitting an affidavit specifying:

> "My husband has had server brain damage witch causes seizures. He has been admitted to hospital. It causes him to forget things. I will be responsible for making sure he makes all his court appointment. Dale is a alcoholic and if he is in jail over 24 hours he is going to need detox very important.  The detox causes seizures."

20.    The affidavit was signed by Mrs. Thomsen and dated June 26, 2017. The document was subscribed and sworn before the clerk of the court, Lisa Wagner. Ms. Wagner signed and dated the affidavit June 26, 2017.  Mrs. Thomsen personally conveyed her concerns to

Ms. Wagner. Ms. Wagner attempted to deliver the affidavit to the release officer, Erin Larsen, who was not available. Ms. Wagner took the affidavit to Ms. Larsen's workstation and put it in her mail slot. She made a photocopy of the affidavit and advised Ms. Thomsen to go to the lobby of the jail, contact a Deputy and provide them with the information. Mrs. Thomsen followed this instruction, taking a copy of the affidavit to the Washington County jail lobby, contacting the corrections officer at the front desk and conveyed her concerns. Mr. Thomsen placed a second phone call to his wife on the night of June 26, 2017, also recorded by Washington County officials, at which time Mrs. Thomsen told her husband that she had spoken to the court clerk, explaining that he suffered from head injuries, was susceptible to seizures, that he was an alcoholic and that if he suffered detoxification, it may cause him to have further seizures. Mrs. Thomsen also conveyed to her husband she had provided this same information to correction officers in the lobby of the jail.

21. On June 27, 2017, Tammy Thomsen once again returned to the Washington County Courthouse and contacted Ms. Wagner to apprise her of her ongoing concerns for her husband's well-being. Ms. Wagner went to the office of Erin Larsen, making Ms. Larsen aware of the affidavit, requesting she come into the lobby to speak with Tammy Thomsen. Ms. Wagner observed the interaction between Ms. Larsen and Mrs. Thomsen. Ms. Wagner assured investigators in the aftermath of Mr. Thomsen's death these events occurred on June 27, 2017.

22. Mr. Thomsen began to become disruptive within the general population of the jail. In the early morning hours of June 28, 2017, Deputy Smith contacted LPN Katie Black

reporting Mr. Thomsen was not acting normal, was calling him "Jim" and telling him "he needs to tell Debbie I'm going to be late." Ms. Black encountered Dale Thomsen at 3:30 AM the morning of June 28, 2017 with a blanket wrapped around himself, using the handrail to steady himself as he walked down the stairs. Nurse Black noted he was hyperverbal, talking a lot, agitated and anxious, during the entire assessment, continually talking to the deputy asking him "to tell Debbie I'm going to be late and calling him Jim." Nurse Black scheduled Mr. Thomsen be seen by mental health because of his confused state of mind.  She would later compare the actions of Mr. Thomsen to someone who had dementia or Alzheimer's disease. Thomsen's vital signs were noted to be abnormal by nurse Black: His blood pressure 165/93, his pulse 117. The vital signs entered by nurse Black resulted in an "Abnormal Vital Signs: Send Alert to Nurse's Queue." NaphCare nurses did not examine Mr. Thomsen in response to the alert.  The mental health chart review was later canceled by Bonnie Lambert.

23.     Shortly after 7 AM the morning of June 28, 2017, Deputy Ulrich was contacted by Deputy Thomas Kind conveying that Mr. Thomsen was continuing to be disruptive, banging and kicking cell doors. Mr. Thomsen was contacted by Deputy Ulrich and described him as semi-cooperative, angry, paranoid and complaining that he was being kidnapped. Mr. Thomsen was placed in handcuffs and transported to a holding cell within the jail. During the transport, Deputy Ulrich stopped at the nursing station and a NaphCare nurse examined Mr. Thomsen. No further treatment was recommended.

24.     Once in his cell, Mr. Thomsen consistently banged and kicked the door of the cell throughout the morning hours. When the banging stopped at approximately 11:40 AM,

Mr. Thomsen was found lying on the floor of his cell. Efforts to resuscitate Mr. Thomsen were unsuccessful.   Mr. Thomsen was transported to Tuality Community Hospital.

25.    In 2012, the Washington County Auditor commenced an audit of the jail healthcare contract.   John Hutzler produced two interim reports in May and November of 2013. Seven months after the death of Madaline Pitkin at the Washington County jail, Mr. Hutzler released his final report in November of 2014 setting forth 30 recommended changes.   Sheriff Pat Garrett and County Administrators Robert Davis and Don Bohn responded to the audit, agreeing with 29 of the 30 recommendations.   The Autidor went on to issue three follow-up reports setting forth the progress made by Sheriff Garrett, Mr. Davis and Mr. Bohn with implementation of the recommended changes.   His third and final report was issued 10 months after the death of Dale thomsen, concluding the policy makers of Washington County, most particularly Mr. Davs, Mr. Bohn and Sheriff Garrett, chose not to implement nine of the agreed to recommendations, while only partially implementing fourt others.   Additionally, NaphCare and the policymakers of Washington County chose not to fully implement a quality assurance plan, consistent with the 2014 recommendations of the Auditor, until two days after the death of Dale Thomsen.   Sheriff Garrett, Robert Davis and Don Bohn chose not to respond to the final report of John Hutzler.

26.    Dr. Clifford Nelson MD commented to those present at the time of the autopsy that Mr. Thomsen had suffered cardiac arrest.

/ / /

/ / /

**Page  11 - First Amended Complaint**

## FIRST CLAIM FOR RELIEF

**Civil Rights - 14ᵗʰ Amendment - 42 USC § 1983**

**Wrongful Death**

27.    Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 26 above.

28.    Defendants Radostitz, Menear, DeMent, Black, Jillette, Hinthorne, Stickney, John/Jane Does 1-10 were deliberately indifferent to Mr. Thomsen's serious medical needs and to his rights under the Fourteenth Amendment of the US Constitution in the following particulars:

a)    In failing to call an ambulance for emergency transport to the local hospital, located minutes away, for diagnosis and treatment, at any time prior to the time of Mr. Thomsen's death on June 28, 2017;

b)    In failing to call for emergency assistance at any time prior to Mr. Thomsen's death;

c)    In failing to provide appropriate medical examination and treatment to Mr. Thomsen in response to notification from deputies;

d)    In failing to provide prompt medical attention to Mr. Thomsen's serious medical needs;

e)    In failing to follow the detoxification program monitoring requirements as set forth in the contract between Washington County and NaphCare;

f)    In failing to follow the standards as published by the National Commission on Correctional Healthcare;

g)    In failing to administer intravenous therapy at any time prior to the time of Mr. Thomsen's death on June 28, 2017;

h)    In ignoring the obvious symptoms displayed by Mr. Thomsen;

i)    In failing to review the medical chart of Mr. Thomsen given the circumstances then and there existing;

j)    In failing to follow NaphCare policies and procedures relating to the diagnosis and treatment of those suffering from alcohol withdrawal;

k)    In seriously aggravating his medical condition by failing to contact a physician or EMS when his condition deteriorated;

l)    In seriously aggravating his medical condition by failing to consistently document treatment, observations, and vital signs in the medical record;

m)    In seriously aggravating his medical condition by failing to provide adequate staffing levels needed for minimally-adequate care;

n)    In failing to act upon the affidavit provided by Tammy Thomsen.

29.    As a direct result of the actions and inactions of defendants set forth above, Thomsen was not provided timely medical care.  If Thomsen had received timely and appropriate medical care, he would have been afforded the precautions and treatment that would have prevented his death.  Thomsen suffered an agonizing death as a result of defendants' failures.  His wife has been denied his love, society and companionship. Thomsen's estate and his wife are entitled to compensatory and pecuniary damages in a sum to be determined at the time of trial.

30.    Defendants' actions and inactions were deliberately indifferent to Thomsen and his

wife's civil rights, and callously disregarded Mr. Thomsen's physical safety, and punitive damages should be awarded in a sum to be determined at the time of trial.

31.     Plaintiff is entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

## SECOND CLAIM FOR RELIEF

### Civil Rights Claim - 14th Amendment - 42 USC § 1983

### *Monell* Claims - Wrongful Death - NaphCare and Washington County

32.     Plaintiff realleges and incorporate herein as though set forth in full paragraphs 1 through 31 above.

33.     NaphCare and Washington County, by and through their supervisory staff and policymakers, were aware of and chose to disregard a substantial risk that its policies, practices and customs with respect to the provision of medical care in the Washington County jail would cause suffering and death. The defective policies, practices and customs caused the suffering and death of Thomsen. The unconstitutional actions and/or omissions of defendants, as well as other officers employed by or acting on behalf of defendants, were pursuant to the following customs, policies, practices and/or procedures of NaphCare and/or Washington County which were directed, encouraged, allowed and/or ratified by policymaking officers for NaphCare and Washington County.  The moving forces that resulted in the deprivation of Thomsen's and his wife's Fourteenth Amendment rights included, but were not limited to the following policies, customs or practices of Washington County and NaphCare:

a)      A policy, custom or practice of failing to follow the monitoring guidelines relating to the medical detoxification program as set forth in the contract between the parties;

b)      A policy, custom or practice of failing to train its employees in the recognition of severe, progressive, and life-threatening withdrawal from alcohol;

c)      A policy, custom or practice of failing to establish and carry out a continuous quality assurance program;

d)      A policy, custom or practice of failing to meet widely accepted community standards of care with regard to medical services for ill or injured inmates and detainees of the Washington County jail;

e)      A policy, custom or practice of denying inmates and detainees at the Washington County jail access to appropriate, competent, and necessary care for serious medical needs;

f)      A policy, custom or practice of discouraging transferring detainees to a licensed acute care facility and/or hospital for medical care;

g)      A policy, custom or practice of refusing to implement all of the recommendations of the Washington County Auditor, including, but not limited to those referencing the quality of medical care, staffing, and cost containment.

34.    The policies, customs or practices of defendants NaphCare and Washington County posed a substantial risk of causing substantial harm to Washington County inmates and detainees.  NaphCare and Washington County were aware, or should have been aware, of these risks.

**Page  15 - First Amended Complaint**

35.   Washington County is also liable for the negligence and deliberate indifference of NaphCare, as described above, for deficient policies, training and supervision, because of Washington County's non-delegable duty to ensure that adequate medical care is provided to pretrial detainees and inmates.

36.   The unconstitutional actions and/or omissions of defendants and other personnel, as described above, were approved, tolerated and/or ratified by policymaking officers for Washington County, its Sheriff's Department, NaphCare, and its personnel. The details of the death of Thomsen have been revealed to authorized policymakers within Washington County, the Washington County Sheriff's Department, and NaphCare, and such policymakers have direct knowledge of the fact that the death of Thomsen was not justified, but rather represented an unconstitutional display of unreasonable, deliberate indifference of serious medical needs, of cruel and unusual punishment. Notwithstanding this knowledge, the authorized policymakers within Washington County, its Sheriff's Department and NaphCare have approved of defendant NaphCare and its employees and agents' conduct in decisions and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Thomsen. By doing so, the authorized policymakers within Washington County and its Sheriff's Department, have shown affirmative agreement with the defendants' actions and have ratified the unconstitutional acts of defendant NaphCare.

37.   As a direct result of the policies, customs or practices of NaphCare and Washington County, Thomsen was not provided timely medical care.   If Thomsen had been adequately diagnosed and treated when jail deputies alerted medical staff to Thomsen's

**Page  16 - First Amended Complaint**

medical condition, he would have been afforded precautions and treatment that would have prevented his death.  Also, as a direct result of the policies, customs or practices of NaphCare and Washington County, Thomsen did not receive prompt and necessary medical care and, as a result, his condition was exacerbated, and he endured and suffered severe physical and emotional distress up to his death.  Pitkin's wife has been denied his love, society and companionship.   Thomsen's estate and his wife are entitled to compensatory and pecuniary damages in a sum to be determined at the time of trial.

38.     The actions of defendants NaphCare and Washington County were recklessly indifferent to Thomsen and his wife's civil rights, and callously disregarded Thomsen's physical safety, and punitive damages should be awarded against defendants NaphCare and Washington County in a sum to be determined at the time of trial.

39.     Plaintiff is entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action.


## THIRD CLAIM FOR RELIEF

### Civil Rights Claim - 14th Amendment - 42 USC § 1983

### Supervisory Liability - Wrongful Death

40.     Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 39 above.

41.     Defendants NaphCare, Washington County, Radostitz, Menear, John/Jane Does 1-10, in their supervisory capacities, were aware of the policies, customs or practices as alleged in paragraph 36 above, and were aware that said policies, customs or practices created a

substantial risk of causing substantial harm to Washington County detainees and inmates by endangering their health, safety, medical and mental health needs.  Despite that knowledge, said supervisors allowed, approved of and ratified said policies, customs or practices.

42.    Defendants NaphCare, Washington County, Radostitz, Menear, John/Jane Does 1-10, in their supervisory capacities, failed to adequately train NaphCare employees:

a)    In both the need and the requirement to provide monitoring at a minimum, of documenting vital signs and determinations of the level of consciousness every two hours for severe cases of alcohol withdrawal consistent with the healthcare contract;

b)    In both the understanding and the recognition of what constitutes a severe case of alcohol withdrawal;

c)    In both the need and the requirement to provide intermittent monitoring of those withdrawing from alcohol;

d)    In the recognition of severe, progressive, and life-threatening withdrawal from alcohol;

e)    In understanding those suffering from severe withdrawal symptoms must never be managed outside of a hospital setting;

f)    In the importance of documenting medical findings, in particular vital signs;

g)    In how to recognize medical emergencies as they relate to withdrawal from alcohol;

h)    On the need to provide prompt medical evaluation of detoxing persons when there

is evidence their condition may be deteriorating;

i)  On the importance of providing appropriate medical management to those suffering from severe alcohol withdrawal;

j)  In failing to properly supervise staff during medical emergencies;

k)  In failing to have competent medical staff available for medical decisions;

l)  In allowing staff to ignore Washington County Corrections' rules and policies regarding medical responsibilities;

m)  In failing to properly train staff on medical emergencies;

n)  In ratifying a custom and practice of ignoring detainees' medical needs by not disciplining staff for violating the policies and pratices of the Washington County Corrections and the National Commission on Correctional Health Care.

43.  Defendants NaphCare, Radostitz, Menear and John/Jane Does 1-10 were aware that failure to train as set forth in paragraph 42 above, created a substantial risk of causing harm to Washington County inmates.

44.  As a direct result of the actions and inactions of defendants NaphCare, Washington County, Radostitz, Menear and John/Jane Does 1-10, Mr. Thomsen endured and suffered severe physical and emotional distress, his medical condition was exacerbated, resulting in his death.  Thomsen's wife has been denied his love, society and companionship. Thomsen's estate and his wife are entitled to compensatory and pecuniary damages in a sum to be determined at the time of trial.

45.  Plaintiff is entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

**Page  19 - First Amended Complaint**

**FOURTH CLAIM FOR RELIEF**

**Negligence - Wrongful Death**

46.    Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 45 above.

47.    The actions of defendants NaphCare and Washington County, acting by and through their employees and agents, were negligent in one or more of the following particulars:

a)    In failing to call an ambulance for emergency transport to the local hospital, located minutes away, for diagnosis and treatment, at any time prior to the time of Mr. Thomsen's death on June 28, 2017;

b)    In failing to call for emergency assistance at any time prior to Mr. Thomsen's death;

c)    In failing to provide appropriate medical examination and treatment to Mr. Thomsen prior to his death on June 28, 2017;

d)    In failing to provide prompt medical attention to Mr. Thomsen's serious medical needs;

e)    In failing to understand how critical blood pressure readings and pulse readings are to medical decision-making;

f)    In failing to recognize the significance of his blood pressure being 165/93, pulse 117;

g)    In failing to completely document Mr. Thomsen's vital signs;

h)    In failing to follow the detoxification program monitoring requirements as set

**Page  20 - First Amended Complaint**

forth in the contract between Washington County and NaphCare;

I)     In failing to follow the standards as published by the National Commission on Correctional Healthcare;

j)     In failing to recognize and diagnose Mr. Thomsen was suffering from severe, progressive, life-threatening withdrawal from alcohol;

k)     In failing to administer intravenous therapy at any time prior to the time of Mr. Thomsen's death on June 28, 2017;

l)     In failing to review the medical chart of Mr. Thomsen given the circumstances then and there existing;

m)    In failing to follow NaphCare policies and procedures relating to the diagnosis and treatment of those suffering from alcohol withdrawal;

n)     In refusing to implement all recommendations of the Washington County Auditor, including, but not limited to those referencing the quality of medical care, staffing, and cost containment;

o)     In failing to act upon the affidavit provided by Tammy Thomsen;

p)     In allowing, approving and ratifying policies, customs, or practices as alleged in paragraphs 33 and 42 above.

48.    As a direct result of the actions and inactions of defendants, and each of them, Mr. Thomsen endured and suffered severe physical and emotional distress and his medical condition was exacerbated, resulting in his death.  His wife has been denied his love, society and companionship.  Mr. Thomsen's estate and his wife are entitlted to compensatory and pecuniary diamages in a sum to be determined at the the time of trial.

**Page  21 - First Amended Complaint**

49.     Notice pursuant to the Oregon Tort Claims Act was given to defendant Washington

        County within the time prescribed by law.


**FIFTH CLAIM FOR RELIEF**

**Gross Negligence/Reckless Misconduct - Wrongful Death**

50.     Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through

        49 above.

51.     Defendant NaphCare, by and through its employees and agents, acting within the course

        and scope of their employment, was grossly negligent and acted with reckless misconduct

        in one or more of the following particulars:

   a)       In failing to call an ambulance for emergency transport to the local hospital,

            located minutes away, for diagnosis and treatment, at any time prior to the time of

            Mr. Thomsen's death on June 28, 2017;

   b)       In failing to call for emergency assistance at any time prior to Mr. Thomsen's

            death;

   c)       In failing to provide appropriate medical examination and treatment to

            Mr. Thomsen at any time prior to his death on June 28, 2017;

   d)       In failing to provide prompt medical attention to Mr. Thomsen's serious medical

            needs;

   e)       In failing to understand how critical blood pressure and pulse readings are to

            medical decision-making;

   f)       In failing to recognize the significance of a blood pressure reading of 165/93 and

pulse of 117 on June 28, 2017;

g)      In failing to document vital signs;

h)      In failing to follow the detoxification program monitoring requirements as set

forth in the contract between Washington County and NaphCare;

i)      In failing to follow the standards as published by the National Commission on

Correctional Healthcare;

j)      In failing to recognize and diagnose Mr. Thomsen was suffering from severe,

progressive, life-threatening withdrawal from alcohol;

k)      In failing to administer intravenous therapy at any time prior to the time of

Mr. Thomsen's death on June 28, 2017;

l)      In failing to review the medical chart of Mr. Thomsen given the circumstances

then and there existing;

m)      In ignoring the expressed concerns of Tammy Thomsen and her affidavit

submitted on June 26, 2017;

n)      In failing to follow NaphCare policies and procedures relating to the diagnosis

and treatment of those suffering from alcohol withdrawal;

o)      In refusing to implement all recommendations of the Washington County Auditor,

including, but not limited to those referencing the quality of medical care,

staffing, and cost containment;

p)      In failing to act on the affidavit provided by Tammy Thomsen;

q)      In allowing, approving and ratifying policies, customs, or practices as alleged in

paragraphs 38 and 47 above.

**Page  23 - First Amended Complaint**

52.    As a direct result of the misconduct of defendant NaphCare, Mr. Thomsen endured and suffered severe physical and emotional distress, and his medical condition was exacerbated, resulting in his death.  His wife has been denied his love, society and companionship.  Mr. Thomsen's estate and his wife are entitled to compensatory and pecuniary damages in a sum to be determined at the time of trial.

53.    The actions of defendant NaphCare were grossly negligent, were recklessly indifferent to Mr. Thomsen's civil rights, and callously disregarded his physical safety.  Punitive damages should be awarded in a sum to be determined at the time of trial.

WHEREFORE, Plaintiff prays for judgment as follows:

**On First Claim for Relief**, for judgment against defendants Radostitz, Menear, DeMent, Black, Jillette, Hinthorne, Stickney, John/Jane Does 1-10, and each of them, for:

A.  Compensatory and pecuniary damages in a sum to be determined at the time of trial, and

B.  Punitive damages in a sum to be determined at the time of trial, and

C.  Necessarily and reasonably incurred attorney fees and costs.

**On Second Claim for Relief**, for judgment against defendants NaphCare and Washington County, and each of them, for:

D.  Compensatory and pecuniary damages in a sum to be determined at the time of trial, and

E.  Punitive damages in a sum to be determined at the time of trial, and

F.  Necessarily and reasonably incurred attorney fees and costs.

**Page  24 - First Amended Complaint**

**On Third Claim for Relief**, for judgment against defendants NaphCare, Washington County, Radostitz, Menear, John/Jane Does 1-10 for:

G.  Compensatory and pecuniary damages in a sum to be determined at the time of trial, and

H.  Punitive damages in a sum to be determined at the time of trial, and

I.  Necessarily and reasonably incurred attorney fees and costs.

**On Fourth Claim for Relief**, for judgment against defendants NaphCare and Washington County, and each of them, for:

J.  Compensatory and pecuniary damages in a sum to be determined at the time of trial, and

K.  Necessarily and reasonably incurred attorney fees and costs.

**On Fifth Claim for Relief**, for judgment against defendant NaphCare, for:

L.  Compensatory and pecuniary damages in a sum to be determined at the time of trial, and

M.  Punitive damages in a sum to be determined at the time of trial, and

N.  Necessarily and reasonably incurred attorney fees and costs.

DATED this 16th day of February, 2022.

TIM JONES PC

By: */s/ Timothy J. Jones*
**Timothy J. Jones**, OSB No. 890654
tim@timjonespc.com
707 SW Washington St., Suite 600
Portland OR 97205

**John M. Coletti**, OSB No. 942740
PAULSON COLETTI TRIAL ATTORNEYS PC
john@paulsoncoletti.com
1022 NW Marshall Street, Suite 450
Portland, OR 97209

**Nadia H. Dahab**, OSB No. 125630
SUGERMAN DAHAB
nadia@sugermandahab.com
707 SW Washington Street Ste. 600
Portland, OR 97205

**Dain Paulson**
dain.paulson@gmail.com
570 NE Tomahawk Island Dr.
Portland, OR 97217

Attorneys for Plaintiff

Plaintiff demands trial by jury.

DATED this 16th day of February, 2022.

TIM JONES PC

By: */s/ Timothy J. Jones*
**Timothy J. Jones**, OSB No. 890654
tim@timjonespc.com
707 SW Washington St., Suite 600
Portland OR 97205

**Page  26 - First Amended Complaint**

**<u>Certificate of Filing</u>**

I HEREBY CERTIFY that on the 16th day of February, 2022, I filed this original

Complaint by Electronic Filing:


Trial Court Administrator
US District Court
740 US Courthouse
1000 SW Third Avenue
Portland OR 97204-2902


By:  _s/ John M. Coletti_
        John M. Coletti, OSB No. 942740
        Of Attorneys for Plaintiff