IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **TAMMY L. THOMSEN,** Personal Representative of the Estate of DALE L. THOMSEN, Deceased;<br><br>Plaintiff,<br><br>v.<br><br>**NAPHCARE, INC.,** an Alabama Corporation; **WASHINGTON COUNTY**, a government body in the State of Oregon; **ERIN LARSEN**, an individual**; LISA WAGNER**, an Individual; **JULIE RADOSTITZ, MD,** an Individual; **MELANIE MENEAR,** an Individual; **KATHEY DEMENT,** an Individual; **KATIE BLACK,** an Individual; **ANDREA JILETTE,** also known as **ANDREA GILLETTE,** an Individual; **MORGAN HINTHORNE,** an Individual; **RACHEL STICKNEY,** an Individual; and **JOHN/JANE DOES 1-10;**<br><br>Defendants. | No. 3:19-cv-00969-MO<br><br>OPINION AND ORDER |

**MOSMAN, J.,**

      On January 29, 2024, I held oral argument on Plaintiff's Objections to Magistrate's Order [ECF 283] and Defendant NaphCare's Objections to Magistrate's Order [ECF 281]. At the hearing, I denied Plaintiff's objections. Mins. of Proceedings [ECF 289]. I granted one of NaphCare's

1 – OPINION AND ORDER

objections and took under advisement its remaining objections. *Id.* For the reasons elaborated below, I now DENY NaphCare's remaining objections.

## BACKGROUND

On June 28, 2017, Dale Thomsen died while in the custody of Washington County Jail. Am. Compl. [ECF 187] at 1. Plaintiff Tammy Thomsen, Thomsen's wife, alleges that Thomsen died from untreated alcohol withdrawal and that if Defendants NaphCare and Washington County had given him the appropriate medical care, he would not have died. *Id.* at 20–21. Defendants disagree and contend that Thomsen died of coronary artery disease. Def. NaphCare's Obj. to Magistrate's Order at 1. Defendants point to the results of Thomsen's autopsy which show complete blockage of his left coronary artery and "significant narrowing" of his right coronary artery. *Id.* at 8.

To support Plaintiff's theory that Thomsen died from untreated alcohol withdrawal, Plaintiff disclosed several proposed experts who opine on Thomsen's cause of death and standards of care for medical professionals and deputies at Washington County Jail. Magistrate's Order [ECF 268] at 2. Defendants moved to exclude Plaintiff's experts under Federal Rule of Evidence 702. NaphCare's Mot. to Exclude [ECF 232]. Magistrate Judge Jeff Armistead held oral argument on the motions. He granted in part and denied in part Defendants' motions. Magistrate's Order at 31.

NaphCare then objected to Judge Armistead's ruling. Of importance here, NaphCare objected to Judge Armistead's ruling allowing Plaintiff's experts Drs. Stuart Graham, Vincent Reyes, Michael Sucher, Gregory Whitman, Amarprit Bains, Samuel Freedman, and Reed Paulson to opine that Thomsen died from alcohol withdrawal. Def. NaphCare's Obj. to Magistrate's Order at 9–10. NaphCare contends that Plaintiff's experts lack sufficient facts and data to support this opinion. *Id.* at 15.

2 – OPINION AND ORDER

I held oral argument on NaphCare's objections. After oral argument, I took under advisement three issues that underpin the admissibility of Plaintiff's experts' opinions on Thomsen's cause of death. These issues are whether Plaintiff's experts have sufficient facts and data to opine that (1) cardiac arrythmia is a feature of delirium tremens ("DTs"); (2) Thomsen died from a cardiac arrythmia; and (3) Thomsen's DTs triggered the cardiac arrythmia.

For the reasons stated below, I reframe issue (1) and find that Plaintiff's experts have sufficient grounds to opine on issues (2) and (3).

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert opinions and testimony. It states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Relevant here is Rule 702(b)'s requirement that a proponent of an expert demonstrate "that it is more likely than not that" the expert's "testimony is based on sufficient facts and data." While proponents are required to demonstrate by a preponderance of the evidence that the expert's opinions are reliable, they "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct." Advisory Committee's Note to 2023 Amend. to Fed. R. Evid. 702 (citing Committee Note to 2000 Amend. to Fed. R. Evid. 702 (citing *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994))).

3 – OPINION AND ORDER

## DISCUSSION

### 1. Cardiac Arrythmia and DTs

After reviewing Plaintiff's experts' reports, I do not think that Plaintiff's experts opine that cardiac arrythmia is a typical feature of DTs. Rather, they opine that DTs caused extra stress to Thomsen's heart, which, given the poor condition of his heart, caused a fatal cardiac arrythmia. For example, Plaintiff's expert Dr. Freedman opines that DTs "significantly raised [Thomsen's] blood pressure and pulse, putting maximum strain on a coronary system with severe [heart] disease." Decl. of Meghan Houlihan [ECF 233], Ex. 29 at 4 (Rebuttal Expert Report of Dr. Freedman). According to Dr. Freedman, this then caused a cardiac arrythmia. *Id.*

Dr. Bains opines that "[a]lcohol withdrawal is a hyperdynamic state which leads to increased work of the heart," and given Thomsen's heart disease, he was "especially susceptible to any increases in cardiac oxygen demands." *Id.*, Ex. 32 at 6 (Expert Report of Dr. Bains). Dr. Bains opines that the increased cardiac demands from DTs strained Thomsen's heart and caused "myocardial infarction and/or arrythmia." *Id.*

And Dr. Graham opines that the blockage of Thomsen's coronary arteries "place[d] [him] at a heightened risk for a cardiac dysrhythmia when subjected to unrelenting physiologic stress associated with" DTs. *Id.*, Ex. 19 at 21 (Expert Report of Dr. Graham); *see also id.*, Ex. 28 at 7 (Expert Report of Dr. Freedman); Ex. 26 at 2 (Expert Report of Dr. Reyes); Ex. 27 at 27 (Expert Report of Dr. Sucher); Ex. 30 at 31 (Expert Report of Dr. Whitman).

In sum, Plaintiff's experts opine that Thomsen's preexisting heart disease in conjunction with DTs caused a fatal cardiac arrythmia. Below I discuss why I find that Plaintiff's experts have a sufficient basis to offer this opinion.

### 2. Thomsen Died from Cardiac Arrythmia

Plaintiff's experts have a sufficient basis to opine that Thomsen died from a cardiac arrythmia because they point to facts that show that Thomsen died from an arrythmia and not another heart condition, such as a heart attack. Dr. Freedman explains that Thomsen died from a cardiac arrythmia, which is an "electrical event," and not a heart attack because the "autopsy found no cardiac muscle damage or [cellular] death," which are hallmarks of a heart attack. Expert Report of Dr. Freedman at 7.

Similarly, Dr. Reyes explains that the autopsy did not show "evidence of an acute infarct or heart failure[,]" and "[i]t has been well demonstrated that an acute or sudden increase in sympathetic activity in the ischemic heart contributes to ventricular tachycardia and fibrillation, resulting in sudden cardiac death." Expert Report of Dr. Reyes at 2. Accordingly, Dr. Reyes concludes, this shows that "Thomsen's cause of death was a cardiac arrythmia." *Id.*

Dr. Freedman and Dr. Reyes's reports show that Plaintiff's experts have sufficient facts to opine that Thomsen died from a cardiac arrythmia.

### 3. DTs Triggered Thomsen's Cardiac Arrythmia

Finally, I find that Plaintiff's experts have sufficient grounds to opine that Thomsen's DTs were a "severe stress event" that triggered his cardiac arrythmia. Expert Report of Dr. Reyes at 2. To begin, Plaintiff's experts agree—and Defendants do not dispute—that typical symptoms of DTs are tachycardia, which is a heart rate over 100 beats per minute,[1] and hypertension. *See, e.g.*, Decl. of Meghan Houlihan, Ex. 4 at 3 (noting that "severe tachycardia" and "hypertension" are

---

[1] *Tachycardia*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/tachycardia/symptoms-causes/syc-20355127#:~:text=Tachycardia%20(tak%2Dih%2DKAHR,as%20a%20response%20to%20stress (last visited January 31, 2024).

5 – OPINION AND ORDER

symptoms of DTs). This suggests that DTs cause increased stress on the heart. Also, Dr. Bains's rebuttal report cites several articles that discuss the nexus between DTs/alcohol withdrawal and cardiac arrest. Decl. of Meghan Houlihan, Ex. 41 at 6. This suggests that DTs can also cause cardiac events.

Looking specifically at how DTs triggered a cardiac arrythmia in Thomsen, Dr. Bains opines:

> [A]lcohol withdrawal is a hyperdynamic state which leads to increased work of the heart. This increased work must, in turn, be supplied by increased blood flow to the heart. If the blood flow to the heart is obstructed, however, the needs of the heart cannot be met and that tissue is deprived of the blood supply it requires. This induces cardiac ischemia which can then develop into a myocardial infarction and/or an arrythmia.

Expert Report of Dr. Bains at 6. Similarly, Dr. Freedman opines that Thomsen's preexisting coronary disease in conjunction with "the huge adrenergic discharge pursuant to [DTs]" caused "a cardiac dysrhythmia/arrythmia." Expert Report of Dr. Freedman at 7.

Notably, even Defendant's expert Dr. Korngold agrees that given Thomsen's heart disease, additional stress on his heart could have caused "a cardiac event":

> Mr. Thomsen's degree of coronary artery disease would carry a significant risk of death or major adverse cardiac events. With this degree of coronary artery disease, additional stress on the heart including illness, overexertion, or emotional distress could precipitate a cardiac event, including an acute coronary syndrome, myocardial ischemia, myocardial infraction (heart attack), cardiac arrest, or death.

Decl. of Nadia H. Dahab [ECF 247], Ex. 8 at 2. Plaintiff's experts go one step further than Dr. Korngold and opine that DTs caused "additional stress" on Thomsen's heart, which then caused a cardiac arrythmia resulting in his death. I think that Plaintiff's experts have shown a sufficient factual basis to support this opinion.

In sum, I find that under Rule 702, Plaintiff's experts have shown a sufficient factual basis to support the opinion that alcohol withdrawal caused Thomsen's death. And I further find—

6 – OPINION AND ORDER

especially given the agreed-upon facts about Thomsen's heart—that the application of the facts to their scientific conclusions was well within the scope of expertise of Plaintiff's experts.

## CONCLUSION

For the foregoing reasons, Plaintiff's experts are allowed to opine that alcohol withdrawal caused Thomsen's death. I therefore DENY Defendants' remaining objections to Judge Armistead's order.

IT IS SO ORDERED.

DATED this  12  day of February, 2024.

*Michael W. Mosman*
MICHAEL W. MOSMAN
Senior United States District Judge

7 – OPINION AND ORDER